UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Jacksonville Division)

| | | |
|---|---|---|
| U.S. BANK EQUIPMENT FINANCE, a division of U.S. BANK NATIONAL ASSOCIATION, | ) ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| | ) | |
| SITE ACTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

NOW COMES Plaintiff U.S. BANK EQUIPMENT FINANCE, a division of U.S. BANK NATIONAL ASSOCIATION ("U.S. Bank"), by and through its counsel, and for its Verified Complaint against Defendants SITE ACTS, INC. ("SAI" or "Defendant"), states as follows:

## PARTIES

1.     U.S. Bank is a national bank organized under the laws of the United States, with its principal place of business in Minneapolis, Minnesota. U.S. Bank maintains its charter and main office in Cincinnati, Ohio.

2.     SAI is a Florida corporation with its principal place of business located at 208 N. Laura St., Jacksonville, FL 32202.  SAI's President is allegedly Ashraf Ayesh ("Ayesh").  SAI allegedly creates customized software for business customers.

## JURISDICTION

3.     Jurisdiction is appropriate in this Court pursuant to 28 U.S.C.A. § 1332(a)(1), as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

1

4.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), because a substantial part of the events or omissions giving rise to U.S. Bank's claims occurred in this district, and because the Defendants reside and/or conduct business in this district.

5.     This case relates to a fraud perpetrated by SAI against U.S. Bank and its assignors in that the equipment finance agreement and equipment lease agreement, detailed below, entered into by SAI, as borrower and lessee, were sham transactions in that SAI, from the time it solicited financing, never intended to make payments under the aforementioned contracts. The lenders which originated the transactions always intended to assign them to U.S. Bank, and U.S. Bank actually paid the supplier of the equipment (Apple, Inc. and Insight Direct USA, Inc.). SAI induced U.S. Bank and fund the purchase of hundreds of Apple Inc.'s laptop computers which SAI represented to U.S Bank's assignors and U.S. Bank that it needed for its business by making SAI to appear to be a legitimate company with hundreds of employees and/or contractors, when in fact SAI had less than five (5) employees and/or contractors. SAI's website was copied in large part from another bona fide, unaffiliated company's website to make SAI appear to be a legitimate business operating in the field of creating customized software, when in fact it was not engaged in that business.

## BACKGROUND

## THE FIRST AGREEMENT (XXX-XXX6870-000)

6.     On or about February 16, 2021, Crest Capital ("Crest"), a non-party, and SAI executed an Equipment Finance Agreement (the "First Agreement"), wherein Crest, as lender, financed the purchase of certain equipment as more specifically described therein (collectively the "Collateral"), for SAI, as borrower. SAI granted Crest a first priority security interest in the same.

2

A true and correct copy of the First Agreement is attached hereto as <u>Exhibit 1</u>.  Before accepting the First Agreement, Crest intended to assign the First Agreement to U.S. Bank, and, so U.S. Bank, and not Crest, paid Apple, Inc. for the Collateral.

7.      Pursuant to the First Agreement, SAI agreed to make thirty-six (36) consecutive monthly payments of \$4,625.66, plus applicable fees and costs.  <u>See</u> Exhibit 1, p. 1.

8.      On or about February 16, 2021 Crest assigned all of its rights, title, and interest, but none of its obligations, in the First Agreement to U.S. Bank, including all rights to payments and the Equipment (the "First Assignment"). A true and correct copy of the First Assignment is attached hereto as <u>Exhibit 2</u>.

9.      On February 17, 2021, U.S. Bank perfected its security interest in the Collateral by filing a UCC Financing Statement with the Florida Secretary of State. A true and correct copy of the UCC Financing Statement reflecting Crest's lien is attached hereto as <u>Exhibit 3</u>.

10.     SAI remains in possession and control of the Collateral

### THE SECOND AGREEMENT(XXX-XXX9740-000)

11.     On or about February 22, 2021, Insight Direct USA, Inc. d/b/a Insight Global Finance ("Insight"), a non-party, and SAI executed a Master Lease Agreement (the "Master Lease"), which contemplated the parties entering into separate Schedules for the lease of equipment. A true and correct copy of the Master Lease is attached hereto as <u>Exhibit 4</u>.  Each Schedule is a separate equipment lease, which incorporates the terms of the Master Lease

12.     Also on or about February 22, 2021, Insight, as lessor, and SAI, as lessee, entered into a Schedule to the Master Lease (the "Lease Schedule") (collectively with the Master Lease, the "Lease"), wherein Insight, as lessor, leased certain equipment as more specifically described

3

therein (the "Leased Equipment"), for SAI, as lessee.  A true and correct copy of Lease Schedule is attached hereto as Exhibit 5. The First Agreement and the Lease shall be collectively referred to as the "Agreements." Before accepting the Lease, Insight intended to assign the Lease to U.S. Bank, and, so U.S. Bank paid Insight Direct USA, Inc., as supplier, for the Leased Equipment.

13.     Pursuant to the Second Agreement, SAI agreed to make thirty-six (36) consecutive monthly payments of $1,959.82, plus applicable fees and costs.  See Exhibit 5, p. 1.

14.     On February 23, 2021, Insight assigned all of its rights, title, and interest, but none of its obligations, in the Lease to U.S. Bank, including all rights to payments and the Leased Equipment (the "Second Assignment"). A true and correct copy of the Second Assignment is attached hereto as Exhibit 6.

15.     U.S. Bank filed a UCC Financing Statement with the Florida Secretary of State reflecting its interest as lessor in the Leased Equipment. See, Exhibit 7.

16.     SAI remains in possession and control of the Leased Equipment.

### DEFAULT

17.     Pursuant to the First Agreement, SAI failed to make the payment due on May 20, 2021, and all payments thereafter.

18.     Pursuant to the Lease, SAI failed to make the payment due on April 23, 2021, and all payments thereafter.

19.     The remaining balance due to U.S. Bank under First Agreement is $150,803.65, plus prejudgment interest, attorneys' fees and costs.

20.     The remaining balance due to U.S. Bank under Lease is $84,832.00, plus prejudgment interest, attorneys' fees and costs.

4

21.     In total, the balance due to U.S. Bank is $235,635.65, plus prejudgment interest, and attorneys' fees and costs.

22.     Failure to make timely payments is an Event of Default under Paragraph 6 of the First Agreement and under Paragraph 12 of the Lease. See Exhibit 1, ¶ 6; see Exhibit 4, ¶ 12.

23.     Upon the occurrence of an Event of Default, U.S. Bank is entitled to seek late charges, all past due payments and future payments, prejudgment interest, attorney's fees and costs. See Exhibit 1, ¶ 6; see Exhibit 4, ¶¶ 10, 13.

24.     U.S. Bank fully performed its obligations under the Agreements.

## COUNT I - BREACH OF THE FIRST AND SECOND AGREEMENTS AGAINST SITE ACTS, INC.

25.     U.S. Bank re-alleges and re-asserts Paragraphs 1 through 24 of its Complaint as though fully set forth herein.

26.     SAI defaulted under the Agreements by failing and refusing to make payments when due. Therefore, SAI is indebted to U.S. Bank in the amount of $235,635.65, plus prejudgment interest, attorneys' fees and costs.

WHEREFORE, Plaintiff U.S. Bank Equipment Finance, a division of U.S. Bank National Association respectfully requests that the Court enter judgment in its favor and against Defendant Site Acts, Inc. in the amount of $235,635.65, plus prejudgment interest at the rate of twelve percent (12%) and eighteen percent (18%) per annum, respectively, attorneys' fees and costs, as well as all other such relief which this Court deems just.

## COUNT II REPLEVIN AGAINST SITE ACTS, INC. UNDER FLA. STAT. § 78.01

27.     U.S. Bank repeats and re-alleges paragraphs 1 through 26 as though fully set forth

herein.

28.     This claim is brought pursuant to Fla. Stat. § 78.01, to recover the Collateral and Leased Equipment as described above, made applicable to this proceeding pursuant to 28 U.S.C. § 1652 as the Collateral and Leased Equipment are located in Florida.

29.     The Fair Market Values of the Collateral and Leased Equipment are $66,864.00 if used, depending on condition.

30.     Due to SAI's failure to make payment as required under the Agreements, U.S. Bank is entitled to possession of the Collateral and Leased Equipment.

31.     U.S. Bank has been unable to secure the Collateral and Leased Equipment by peaceful means.

32.     SAI is wrongfully and unlawfully detaining the Collateral and the Leased Equipment.

33.     To Plaintiff's best knowledge, information, and belief, SAI wrongfully detains the Collateral and Leased Equipment because it intends to steal the Collateral and Leased Equipment, as more fully explained in U.S. Bank's fraud count set forth below.

34.     U.S. Bank has made demand upon SAI for the return of the Collateral and Leased Equipment, but SAI has failed and refused to return same.

35.     U.S. Bank will suffer irreparable damages if the Collateral and Leased Equipment are not returned to U.S. Bank, because SAI is not paying on the Agreements such that recovery of the Leased Equipment and Collateral may be U.S. Bank's only recovery in this case.

36.     Upon information and belief, the Collateral and Leased Equipment is located at 208 N. Laura St., Jacksonville, FL 32202 (where it was shipped) or such other place where SAI may

6

have moved it.

37.     Pursuant to the Agreements, U.S. Bank either has a first priority security interest in the Collateral (the First Agreement) or is the owner of the Leased Equipment (the Second Agreement).

38.     Pursuant to Fla. Stat. § 78.02, the Collateral has not been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of such plaintiff, or against him or her individually, nor seized under any lawful process against the goods and chattels of such plaintiff subject to such lawful process, nor held by virtue of any order for replevin against such plaintiff.

39.     U.S. Bank's right to possession of the Collateral and Leased Equipment is superior to the rights of SAI.

40.     Accordingly, U.S. Bank is entitled to an order and/or writ directing the United States Marshal and/or Sheriff, or other lawful authority to use all necessary force to recover the Collateral and/or Leased Equipment and/or any portion thereof from 208 N. Laura St., Jacksonville, FL 32202 or any other location where same may be found. If all of the Collateral and/or Leased Equipment is not repossessed, a judgment for damages against Site Acts, Inc. for the value of any Collateral and/or Leased Equipment not so returned, plus interest and any attorney's fees and costs authorized by law, as well as all other and further relief which this Court deems just.

WHEREFORE, U.S. Bank Equipment Finance, a division of U.S. Bank National Association respectfully demands: 1) a final judgment of possession directing the United States Marshal and/or Sheriff, or other lawful authority to use all necessary force to recover the Collateral

and/or Leased Equipment and/or any portion thereof from 208 N. Laura St., Jacksonville, FL 32202 or any other location where same may be found; and 2) if all of the Collateral and/or Leased Equipment is not repossessed, a judgment for damages against Site Acts, Inc. for the value of any Collateral and/or Leased Equipment not so returned, plus interest and any attorney's fees and costs authorized by law, as well as all other and further relief which this Court deems just.

**COUNT III**
**ORDER COMPELLING TURNOVER OF THE COLLATERAL PURSUANT TO**
**FLA STAT. 679.609(3)**

41.     U.S. Bank repeats and re-alleges paragraphs 1 through 40 as though fully set forth herein.

42.     The Agreements provide that U.S. Bank may use all remedies available to it under the Uniform Commercial Code ("UCC"), including delivering the Collateral and/or Leased Equipment to U.S. Bank upon default. <u>See</u> Exhibit 1, ¶ 6; <u>see</u> Exhibit 4, ¶¶ 13, 14.

43.     U.S. Bank demanded return of the Collateral and Leased Equipment, but SAI failed to return the same.

44.     Fla. Stat. Ann. § 680.525 (West) provides:

a.      (1) If a lessor discovers the lessee to be insolvent, the lessor may refuse to deliver the goods.

b.      (2) After a default by the lessee under the lease contract of the type described in s. 680.523(1) or (3)(a) or, if agreed, after other default by the lessee, the lessor has the right to take possession of the goods. If the lease contract so provides, the lessor may require the lessee to assemble the goods and make them available to the lessor at a place to be designated by the lessor which is reasonably

8

convenient to both parties. Without removal, the lessor may render unusable any goods employed in trade or business and may dispose of goods on the lessee's premises (s. 680.527).

c.      (3) The lessor may proceed under subsection (2) without judicial process if it can be done without breach of the peace, or the lessor may proceed by action.

See also Minn. Stat. Ann. § 336.2A-525 (West); see also N.J. Stat. Ann. § 12A:2A-525 (West)

45.   Fla. Stat. Ann. § 679.609 (West) provides:

679.609   Secured party's right to take possession after default. —

(1)   After default, a secured party:

    (a)   May take possession of the collateral; and

    (b)   Without removal, may render equipment unusable and dispose of collateral on a debtor's premises under s. 679.610.

(2)   A secured party may proceed under subsection (1):

    (a)   Pursuant to judicial process; or

    (b)   Without judicial process, if it proceeds without breach of the peace.

(3)   If so agreed, and in any event after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties.

See also Minn. Stat. Ann. § 336.9-609 (West); see also N.J. Stat. Ann. § 12A:9-609 (West)

46.   Under the Agreements, SAI is required to deliver the Collateral to U.S. Bank.

47.   Because SAI has failed to return the Collateral, U.S. Bank is entitled to an order

9

compelling SAI to return the Collateral to U.S. Bank.

48.     U.S. Bank is willing to accept the Collateral at a location selected solely by U.S. Bank, which is reasonably convenient to both U.S. Bank and SAI.

WHEREFORE, U.S. Bank Equipment Finance, a division of U.S. Bank National Association respectfully demands a final judgment compelling Site Acts, Inc. to make available the Collateral to U.S. Bank at a time and place directed solely by U.S. Bank within ten (10) days of this Court's entry of judgment, as well as all other and further relief which this Court deems just.

## COUNT IV
## FRAUD IN THE INDUCEMENT

49.     U.S. Bank repeats and re-alleges paragraphs 1 through 48 as though fully set forth herein.

50.     The First Agreement and Lease are sham transactions initiated by SAI to defraud U.S. Bank and its assignors into buying the Apple Inc. laptop computers identified in the Agreements (the Collateral and Leased Equipment), so they could be delivered to SAI, with SAI then disposing of the laptop computers for its own financial benefit. From the inception of the negotiations leading up to the Agreements, SAI never had any intention of re-paying the financing reflected in the Agreements, because its goal was to obtain the Collateral and Leased Equipment by duping U.S. Bank and its assignors into believing that the transactions were in fact bona fide. Once it obtained the Collateral and Leased Equipment, SAI disappeared and ceased operating as a going concern as of approximately April 2021.

51.     In November and December 2020, SAI solicited financing through equipment finance agreements and true leases from Crest and Insight. Crest and Insight, upon receipt of SAI's

interest in financing equipment, solicited funding from U.S. Bank for financing which resulted in the First Agreement and Lease, passing along the credit applications submitted by SAI to Crest and Insight.  Before either Crest or Insight accepted the transactions, U.S. Bank reviewed SAI's credit applications and the proposed terms of the financing, including the Agreements (before they were executed) to be offered by Crest and Insight to SAI.

52.    After receiving U.S. Bank's credit approval, Crest and Insight then solicited and obtained SAI's signature on the Agreements.  In the Agreements, SAI represents that the Collateral and Leased Equipment are to be used for business purposes only. See Exhibit 1, ¶ 1; see Exhibit 5, ¶ 4. SAI further agrees that it has selected the vendor/supplier of the Collateral and Leased Equipment and that it accepts all risks associated with same including any issues relating to software and/or function.  SAI also promised to make timely payments unconditionally.

53.    In accepting the assignments from Insight and Crest and in funding the suppliers of the Collateral and Leased Equipment, U.S. Bank relied upon SAI's written representations in the Agreements, including but not limited to, SAI's representation that it selected the vendor of the equipment, and that the Collateral and Leased Equipment would be used for business purposes, and that SAI would make its payments under the Agreements unconditionally.  In addition, U.S. Bank relied on SAI's implied covenant of good faith and fair dealing which requires SAI to perform its contractual obligations with honesty in fact.

54.    U.S. Bank's reliance upon SAI's written representations, its covenant of good faith and fair dealing, and its actions in soliciting financing, and submitting credit information was reasonable and justified.

55.    SAI knew and/or should have known that it had no intention of honoring the

11

Agreements and that it intended to keep the Collateral and Leased Equipment for itself, all without making material payments under the Agreements. SAI had this knowledge because SAI, at all relevant times, was not a bona fide company operating in its claimed field of customized software development. At all relevant times, SAI did not have anywhere near the number of employees and/or contractors who were able to use the Collateral and Leased Equipment, because SAI had less than five employees and yet ordered hundreds of laptops. SAI's website is largely plagiarized from another company's website.

56. SAI's act of executing the Agreements constitutes fraud intended to induce U.S. Bank and its assignors into countersigning the Agreements, and inducing U.S. Bank to pay the supplier of the Leased Equipment and Collateral. As a proximate result of SAI's fraudulent inducements, U.S. Bank has suffered actual damages in the amount of $235,635.65. U.S. Bank is also entitled to punitive damages of not less than ten times its actual damages.

WHEREFORE, Plaintiff U.S. Bank Equipment Finance, a division of U.S. Bank National Association respectfully requests the Court enter judgment in its favor and against Defendant Site Acts, Inc. in the amount of $235,635.65, plus interest, attorney's fees and costs, punitive damages of ten times (10x) U.S. Bank's actual damages, as well all as all other relief that this court deems just.

THE LAW OFFICES OF RONALD S.
CANTER, LLC


/s/ Ronald S. Canter
Ronald S. Canter, Esq.
Bar # 335045
200A Monroe Street, Suite 104
Rockville, Maryland 20850
Telephone: (301) 424-7490
Facsimile: (301) 424-7470
rcanter@roncanterllc.com

*Local address:*
400 S. Dixie Hwy #322
Boca Raton, Florida 33432

*Attorney for Plaintiff U.S. BANK EQUIPMENT
FINANCE, a division of U.S. BANK NATIONAL
ASSOCIATION*

13

## **VERIFICATION**

Under penalty of perjury under the law of Florida, the undersigned Declarant certifies that the statements set forth in the Verified Complaint in Replevin are true and correct, the attached exhibits are true and accurate copies, the amounts of damages are true and correct, and except as to the matters stated to be on information and belief, the undersigned certifies as aforesaid that he verily believes the same to be true.

Executed on the __3rd__ day of January, 2022, at Marshall, Minnesota.

*Traci Serreyn*
_____

Traci A. Serreyn
Loss Mitigation Specialist
1310 Madrid St., Marshall, MN 56258

13